**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| IN RE: FOSAMAX® (ALENDRONATE SODIUM): PRODUCTS LIABILITY LITIGATION | **HONORABLE KAREN M. WILLIAMS**<br><br>**MDL No. 2243**<br>Civil Action No. 08-08 (KMW) (MJS)<br><br>*Filed Electronically* |

**WILLIAMS, District Judge:**

This matter comes before the Court by way of Defendants Merck & Co., Inc. and Merck Sharp & Dohme LLC's ("Defendants") Motion to Dismiss (Dkt. No. 4865) with prejudice, pursuant to Fed. R. Civ. P. 41(b), the cases of numerous Plaintiffs that are consolidated with this multidistrict litigation for failure to comply with Case Management Order 16. (Dkt. No. 4588.)

### I.     BACKGROUND

Defendants' Motion to Dismiss seeks the dismissal of certain Plaintiffs identified in Exhibit A (*see* Dkt. No. 4872) for failure to comply with the requirements of Case Management Order 16 ("CMO 16"). (Dkt. No. 4588.) On April 11, 2025, the Honorable Judge Matthew J. Skahill, U.S.M.J., entered CMO 16 which provided, in pertinent part, that "[e]very Plaintiff (or their appropriate representative or anticipated representative) shall complete the required applicable Certification attached as Exhibit A [to CMO 16] stating that the Plaintiff (or their appropriate representative or anticipated representative) is willing and able to proceed with this litigation." *Id.* The deadline for Plaintiffs to provide the Certification was June 10, 2025. *Id.*

Counsel for Defendants, Eileen Muskett, Esq., submitted a Certification attesting that she "sent emails and/or letters to the last known email address and/or street address of counsel for plaintiffs or the pro se plaintiffs who had failed, by June 10, 2025, to provide a certification in

compliance with CMO 16." (Certification of Eileen Muskett, Esq. ("Muskett Cert."), ¶ 5, Dkt. No. 4865-3.) On September 9, 2025, Judge Skahill granted Defendants' request for permission to file an omnibus motion to dismiss with prejudice the cases for which the applicable certification was not submitted. (*See* CMO 17, Dkt. No. 4863.) Attached to Defendants' Motion to Dismiss was a list of those Plaintiffs who failed to provide the certification required by CMO 16 stating that they are willing and able to proceed with this litigation. (*See* Defendants' Motion to Dismiss, Exhibit A, Dkt. No. 4865-2.)

Thereafter, several Plaintiffs submitted certifications in opposition to Defendants' Motion to Dismiss, indicating that they complied with CMO 16 albeit after the certification deadline. (*See* Dkt. Nos. 4866, 4869.) Defendants do not seek dismissal as to these late-complying Plaintiffs and have excluded them from the revised Exhibit A filed on the MDL docket. (*See* Dkt. No. 4872.) The Court shall hereafter refer to the remaining Plaintiffs identified in the revised Exhibit A as "Exhibit A Plaintiffs." (*See id.*)

Before the Court is Defendants' Motion to Dismiss (Dkt. No. 4865) the Plaintiffs identified in Exhibit A (Dkt. No. 4872) pursuant to Fed. R. Civ. P. 41(b) for failure to comply with the above deadlines set forth in Case Management Order 16 (Dkt. No. 4588), based on their lack of submissions.

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." The Third Circuit has set forth certain factors a district court must consider in determining whether to dismiss an action pursuant to Rule 41(b). *See Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984). These factors are:

2

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Id.* at 868. While all the *Poulis* factors should be considered, there is no "magic formula." *Briscoe v. Klaus,* 538 F.3d 252, 263 (3d Cir. 2008). The Court applies these factors because "dismissal with prejudice is, undeniably, a drastic sanction." *In re Asbestos Prods. Liab. Litig. (No. VI),* 718 F.3d 236, 246 (3d Cir. 2013) (citing *United States v. $8,221,877.16 in U.S. Currency,* 330 F.3d 141, 161 (3d Cir. 2003). The Court notes, however, that "where a litigant wilfully refuses to prosecute his case or effectively makes it impossible to proceed," a district court need not consider the *Poulis* factors at all but rather is left with "little recourse other than dismissal." *Jackson v. U.S. Bankr. Ct.,* 350 F. App'x 621, 624 (3d Cir. 2009); *see also McLaren v. N.J. Dept. of Educ.,* 462 F. App'x 148, 149 (3d Cir. 2012) (holding "when a litigant's conduct makes adjudication of the case impossible, [a] balancing under *Poulis* is unnecessary.").

The Third Circuit has recognized that district courts "must have authority to manage their dockets, especially during [a] massive litigation." *In re Asbestos Prods. Liab. Litig. (No. VI),* 718 F.3d at 246. Moreover, "administering cases in multidistrict litigation is different from administering cases on a routine docket." *Id.* To this end, "[t]he parties' compliance with case management orders is essential in a complex litigation such as this." *Id.* at 247. "Thus, a sprawling multidistrict matter such as this presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation." *Id.*

With this in mind, the Court turns to the merits of Defendants' Motion to Dismiss.

3

### III. DISCUSSION

As an initial matter, the Court finds that the dismissal of Exhibit A Plaintiffs is appropriate because they have made adjudication of this case impossible. *See Jackson*, 350 F. App'x at 624; *see McLaren*, 462 F. App'x at 149. Exhibit A Plaintiffs have ignored this Court's directive to indicate that they are willing and able to proceed. (Dkt. No. 4588.) CMO 16 cautioned those Plaintiffs that failure to do so would entitle Defendants to seek dismissal of their actions with prejudice. (*See id.*) CMO 17 further cautioned that the Plaintiffs who failed to comply with CMO 16 would be subject to dismissal with prejudice. (Dkt. No. 4863 at 1, ¶ 2.) Nor did the Exhibit A Plaintiffs oppose the dismissal of their cases upon Defendants' filing of their Motion to Dismiss, which would have resulted in Defendants simply excluding them from Exhibit A as they did with the several Plaintiffs who filed oppositions. (*See* Dkt. Nos. 4866, 4869; *see also* Dkt. No. 4872.) By failing to comply with CMO 16 and ignoring the pending Motion to Dismiss, Plaintiffs' own conduct has made adjudication of this case impossible and, on this basis alone, warrants dismissal of the action.

Additionally, the Court finds that the *Poulis* factors support dismissal of the Exhibit A Plaintiffs' cases at this time because they have failed to comply with the Court's Orders and directives and have failed to prosecute their cases.

The Court specifically finds that the first *Poulis* factor, Exhibit A Plaintiffs' personal responsibility, weighs in favor of dismissal. As recounted above, these Plaintiffs have failed to advance their cases within the time allotted by this Court's Orders and failed to oppose Defendants' Motion to Dismiss. Thus, Exhibit A Plaintiffs are squarely responsible for their failure to comply and move their cases forward.

4

The Court also finds that the prejudice to Defendants—the second *Poulis* factor—weighs in favor of dismissal. "Prejudice" in this context does not mean "irreparable harm," but "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). "'Only [t]he [plaintiff] can take steps to prosecute the case,' and when the plaintiff does not do so, the defendant is left in limbo with the uncertainty, costs, and stress that entails." *Russo v. Gov't Emp. Ins. Co.*, 345 F.R.D. 65, 78 (D.N.J. 2023) (quoting *Dickens v. Danberg*, 700 F. App'x 116, 118 (3d Cir. 2017)). As previously noted, Plaintiffs have overtly disregarded numerous orders by this Court cautioning that failure to comply with CMO 16 would result in dismissal of their actions. Defendants have had to expend time and resources to seek dismissal of Exhibit A Plaintiffs' cases, the resolution of which has been delayed due to their failure to comply with this Court's Orders and procedures. Courts in this district have found that prejudice is established where, as here, "Defendant[s] ha[ve] . . . been deprived of anything resembling a speedy resolution of this matter." *Clauso v. Martinelli*, No. 18-12217, 2024 WL 5202360, at *4 (D.N.J. Dec. 23, 2024).

The third *Poulis* factor also weighs in favor of dismissal given Exhibit A Plaintiffs' demonstrated history of dilatoriness. As previously discussed, Exhibit A Plaintiffs have demonstrated inexcusable neglect in their failure to respond to this Court's Orders and advance their cases within the ample time that Plaintiffs were afforded to do so. Plaintiffs' repeated failure to litigate their actions within the deadlines set forth by the Court's Orders demonstrates their history of dilatoriness.

Similarly, the Court finds that the fourth *Poulis* factor, regarding the willfulness of the conduct at issue, also weighs toward dismissal. "[W]here the record is unclear as to whether a party acted in bad faith, a consistent failure to obey orders of the court, 'at the very least, renders

5

[a party's] actions willful for the purposes of the fourth *Poulis* factor.'" *Hunt–Ruble v. Lord, Worrell & Richter, Inc.,* No. Civ. A. 10–4520, 2012 WL 2340418, at *5 (D.N.J. June 19, 2012) (quoting *Martino v. Solaris Health Sys. Corp.,* No. Civ. A. 04–6324, 2007 WL 1959226, at *5 (D.N.J. June 29, 2007)). Here, Plaintiffs' lack of court-ordered participation demonstrates that they are unable or unwilling to undertake the obligations of their lawsuit.

The fifth *Poulis* factor, effectiveness of sanctions other than dismissal, bears substantial weight in support of dismissal. Alternative sanctions, such as fines, are effective when they are likely to "spur [a party] to resume actively litigating th[e] case." *Russo,* 345 F.R.D. at 78 (citing *Jit Shi Goh v. Coco Asian Cuisine Inc.,* 2018 WL 7412833, at *3 (D.N.J. July 23, 2018), *report and recommendation adopted,* 2019 WL 861374 (D.N.J. Feb. 22, 2019)). Where an attorney has caused the delay and noncompliance in the proceedings, we have noted that "[u]nder the Federal Rules of Civil Procedure and the 1983 amendments, the district court is specifically authorized to impose on an attorney those expenses, including attorneys' fees, caused by unjustified failure to comply with discovery orders or pretrial orders." *Briscoe,* 538 F.3d at 262. "[I]t is appropriate for courts to consider the broader context of a party or attorney's conduct in other cases when deciding on a particular sanction." *Adlife Mktg. & Commc'ns Co., Inc. v. Karns Prime & Fancy Food, Ltd.,* No. 21-2074, 2023 WL 179840, at *4 (3d Cir. Jan. 13, 2023); *see also Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1179 n.15 (3d Cir. 1993) (weighing counsel's "improper conduct" in other cases when deciding whether to sanction him); *Doering v. Union Cnty. Bd. of Chosen Freeholders,* 857 F.2d 191, 197 n.6 (3d Cir. 1988) (citing other considerations when awarding sanctions, such as "the public interest in encouraging particular suits," "economic considerations," or "the attorney's history of filing frivolous actions or alternatively, his or her good reputation").

6

Here, counsel for Exhibit A Plaintiffs compliance with CMO 16 was entirely dependent on their certification that they were willing and able to proceed with the litigation. (*See* Dkt. No. 4588.) Because there is no indication in the record that the law firms representing Exhibit A Plaintiffs have failed to exercise diligence or bear any fault with respect to the Exhibit A Plaintiffs' lack of response to CMO 16, the Court finds that sanctions against counsel are inappropriate. *See Adlife Mktg. & Commc'ns Co., Inc.*, 2023 WL 179840, at *4; *Lightning Lube, Inc.*, 4 F.3d at 1179 n.15; *Doering*, 857 F.2d at 197 n.6.

Similarly, the Court finds that the issuance of monetary sanctions against the litigants would not be an acceptable alternative for several reasons. First, there is nothing in the record to suggest these Plaintiffs have any assets or income to pay a sanction.[1] *See Jit Shi Goh*, 2018 WL 7412833, at 3 (citing *Emerson v. Thiel College* 296 F.3d 184, 191 (3d Cir. 2002)) (holding fifth *Poulis* factor was satisfied where monetary sanctions against an indigent plaintiff would be inappropriate or impractical). Second, because the Exhibit A Plaintiffs were not "spur[red] to resume actively litigating th[e] case" by the promise of the "Confidential Master Settlement Agreement," the Court is inclined to view their failure to comply with CMO 16 as reflecting a genuine inability or unwillingness to proceed, and no monetary sanction would likely compel a different result. *See Russo*, 345 F.R.D. at 78; (*see* Dkt. No 4824.) Lastly, as this sprawling multidistrict litigation involves numerous other litigants who would be adversely impacted by the delays attendant to threatening or imposing monetary sanctions as a first resort, the Court finds that the public interest renders the sanction of dismissal against Exhibit A Plaintiffs the appropriate remedy to expeditiously resolve this matter without undue delay to the many other Plaintiffs who

---

[1] Indeed, experience teaches that these personal-injury Plaintiffs have very likely retained counsel through contingent fee agreements. Thus, the mere fact they are represented by counsel does not necessarily suggest that they have sufficient means for monetary sanctions to represent an "effective alternative." *See Briscoe*, 538 F.3d at 263.

7

have complied with this Court's orders. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d at 246-247. Thus, the Court finds that the fifth *Poulis* factor weighs in favor of dismissal because no lesser sanction would be effective. *See id.*; *see Briscoe*, 538 F.3d at 262.

Finally, the sixth *Poulis* factor requires the Court to consider the merits of Exhibit A Plaintiffs' cases and Defendants' defenses. However, Exhibit A Plaintiffs' failure to respond to this Court's multiple orders, oppose Defendants' pending Motion to Dismiss, or otherwise communicate with the Court or Defendants' counsel "renders any such analysis impossible." *See Mantill v. Soled Out JC Ltd. Liab. Co.*, No. 24-7233, 2025 WL 1435951, at *3 (D.N.J. Apr. 30, 2025), *R&R adopted*, No. 24-7233, 2025 WL 1435715 (D.N.J. May 19, 2025). Therefore, this factor is "at best neutral, in that the Court is not in a position to fully assess the merits" of each Exhibit A Plaintiff's case. *Id.* "The Third Circuit has repeatedly held that district courts must balance the *Poulis* factors and that every factor need not weigh in favor of dismissal." *Id.* Here, because the majority of the *Poulis* factors weigh in favor of dismissal, the Court finds good cause to dismiss the matter pursuant to Federal Rule of Civil Procedure 41(b).

## IV. CONCLUSION

For all the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss with prejudice (Dkt. No. 4865). An Order consistent with this Memorandum Opinion will be entered.

Dated: October 8, 2025

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

8